Tueley, J:
We are not satisfied with the verdict, upon which the judgment was rendered in the court below, against the prisoner. We have repeatedly had occasion to assert that, in criminal cases, we will weigh the evidence; and if it preponderate against the verdict, grant a new trial; and we do this out of the great regard in which the law holds life and liberty; declaring, as it does, that in every instance where either the one or the other is sought to be assailed by a criminal prosecution, the guilt of the person charged shall be established beyond a reasonable doubt. In administering the law, with this benign provision in favor of criminals, it would be mockery in a court of last resort, to hold that upon an application for a new trial, it would not weigh the evidence, but, hold the verdict of the jury conclusive of the criminal’s guilt, if there were any proof by which it could be sustained. This would be to place no higher estimate upon life and liberty than upon property, and to subject them to the same rule in relation to this particular.
In holding ourselves not to be bound by the verdict of a jury in criminal proceedings, unless in our judgment the proof upon which it rests clearly preponderates in favor of its truth, we do not wish to be considered as meaning that it is wholly ineffectual and inoperative, and that we are left free to consider of the truth of the charge, upon the proof, in the same manner and to the same extent *145 with it, as without it: very far from it. The jurors are the legitimate tryers of questions of fact in criminal, as well as civil cases; and their verdict must always have great weight with a revising court. But it is not conclusive except in cases of acquittal; and we are not of those who look upon it as a thing too sacred to be touched; and, therefore, always to be approached with fear and trembling. We have seen too much of the practical uncertainty of such things, to have any such feelings in regard to it, and therefore readily disregard it, if, in our judgment we think it should be disregarded. But, still it being against the prisoner, the presumption of guilt is thereby fixed upon him: previously the presumption was in favor of his innocence, and this presumption of guilt which the verdict has attached, must be removed before a new trial can be granted. Before the verdict, the accused is entitled to the benefit of all reasonable doubts, of his guilt, in his favor. After verdict, he has lost this privilege; he cannot obtain a new trial by insisting that there is a reasonable doubt of his guilt, but only by shewing that there is a reasonable ground in favor of his innocence; or, in other words, before verdict the testimony against him cannot be weighed with a view to its preponderancy. It must be of a character to establish his guilt to a moral certainty: but after this proof has been submitted to a jury, and analyzed by their minds, and a verdict of guilty returned, then in order to obtain a new trial he must shew that the weight of evidence is in favor of his innocence. This much a verdict of guilty, in criminal cases, produces in every case, and it is much in its operation upon the court in. relation to granting new trials. But for the verdict, the court, in reviewing the *146 proof, would have to be governed by the common law principle, that the accused is to have the benefit of all rational doubts as to his guilt, and therefore could not weigh the evidence. But upon motion for a new trial the testimony is to be weighed, and unless it preponderate in favor of his innocence, a new trial will be refused.
But to return to our subject. We again say, we are not satisfied with the verdict which has been found in the present case: and because we think that the weight of the evidence as adduced in this case is in favor of the prisoner’s innocence of the offence with which he stands convicted.
This is an indictment for murder, and the jury has found the accused guilty of murder in the second degree. To sustain this verdict, the proof must shew that the homicide was committed with malice aforethought, either expressed or implied, and was not the result of sudden heat upon adequate provocation.
We do not think that the proof establishes the killing to have been with malice aforethought. There is no satisfactory evidence of any previous grudge on the part of the prisoner, against the deceased, of such a character to cause him to seek her life; or that he went to her house, on the morning of the tragedy, with any design to inflict upon her any injury whatever. He was in the habit of visiting her. She was a lewd woman, and he appears to have been a bad young man, of very loose and irregular habits. He was in the habit of visiting her, more (from the proof) for the purpose of deviling and harrassing her, than any thing else: and she being a woman of tempestuous passion, he no doubt considered it fine fun, to excite her into a rage, and to witness its operations upon her. Such seems to have *147 been tbe design of his visit on the occasion which produced her death. It seems that she at that time was under the illicit protection of a man who, for some cause or other, wore goggles over his eyes. For the purpose of turning him into ridicule, in her excitable imagination, the prisoner, upon this visit, wore over his own eyes, an old pair of spectacle frames without glasses. And this seems to have produced all the effect he anticipated; for as soon as he entered the house, the deceased commenced the use of offensive language, and accused him of having come to raise a difficulty; to which he replied, he had come for no such purpose, but that if she wanted a fuss, she could have it: to which the deceased retorted, yes you did, and I can whip you; and immediately struck a blow at his face, which he dodged. She then picked up a skillet and commenced a violent assault upon him; striking him a blow upon the back of his head, which knocked him down. When he arose, he drew a pistol, and she continuing the assault upon him with the skillet, he shot her. This was a horrible catastrophe; one which the prisoner must, if he have any feeling, regret to the day of his death, and for which he can, in no event, hold himself excusable. But that is not the question for our consideration. Is this a killing with malice aforethought; and is this malice established by the use of this deadly weapon, under the circumstances? We think not.
Before further reasoning upcin this subject, it is proper to observe that, the facts connected with this homicide, as above stated, are drawn from the evidence of the only other person present, (McGarr,) when the crime was committed, and therefore the only one who could give a detailed statement of the transaction. It is true that he was *148 arrested as an accomplice, but he was discharged from the accusation by the grand jury'which investigated the case: and there is in this record, no evidence by which his credibility is impeached, except the fact that he was with the prisoner at the time. And in addition, his evidence is corroborated by that of a witness introduced by the state who says that, the deceased told her that she had struck, or tried to strike, the prisoner with a skillet before he shot her, and had broken it in the attempt; and she then saw the pieces lying on the floor.
I can see no reason why the jury should have disbelieved the witness who gave a detailed account of the affair, on the part of the defence. I am not prepared to do so myself, and cannot justify the jury in having done it.
Assuming then the facts as detailed by this witness, to be true, it is evident that the deceased made a most violent, dangerous, and unjustifiable assault upon the prisoner, with a very dangerous and deadly weapon: that she prostrated him with it, by a blow upon the back of the head, and that she continued in the attempt to injure him with it, until she was shot.
Now, in connection with this, let us see what were the physical capabilities of the deceased to inflict injury, and what those of the prisoner, to resist it. The deceased was a very violent, turbulent, masculine woman of the worst character, says one witness: she was a very strong, masculine woman, say others: several say, she was a very powerful woman, very violent and turbulent in her disposition; a full match for a common man. The prisoner, on the contrary, is of unusually small stature, and very youthful in his appearance; and in *149 addition thereto, has lost his right hand. It is obvious that in an equal straggle he was no match for the deceased, and that if not interfered with, she could have beat him to death with the skillet.
Then under all these circumstances, if the deceased had made an assault of the character described, with the weapon described, and it was unprovoked on the part of the prisoner, and he had killed her in resisting it, it would have been homicide excusable in self-defence.
But as it appears that the prisoner was in the habit of provoking the deceased; that he probably went to her house on that morning for the purpose of doing so again; that he knew her irritable, furious temper, and might therefore reasonably expect her out-break, he was acting in his own wrong, and cannot claim to be wholly excused from the consequences; unless it should appear that the assault was of so violent and sudden a character as to make it impossible, or very dangerous, for him to retreat from it; or unless the doors of the house (about which there is some proof) were so barred upon him, as to make retreat impossible. But these are questions for the consideration of the jury upon another trial.
For the present, all that it is necessary for us to hold is, that the presumption of malice arising in law from this killing, and from the deadly character of the weapon used, is rebutted by the proof of the suddenness of the rencounter, the violence of the assault on the part of the deceased, and the dangerous nature of the weapon used by her. And in the absence of proof of express malice, this killing must be held to have been the result of sudden heat and excited passion, and therefore not murder in either the first or second degree.
Judgment reversed and prisoner remanded.
*150 Geeen, J:
I do not think the statement of witness, McGarr, that “ the deceased struck the prisoner a violent blow on the back of the head with a skillet and knocked him down, and that as he arose he shot her,” is entitled to the least credit. If such blow had been stricken, a wound would have been inflicted, the existence of which would have been proved by other witnesses. Nevertheless, I concur in awarding a new trial. The witness proves that the deceased first assaulted the prisoner with the skillet; and. that fact is proved by the dying declaration of the deceased, as detailed by Mrs. Woods, a witness called by the state. She says deceased told her, that she (the deceased) “struck at Leake with the skillet before he shot her, and had broken it.” This I think, under the circumstances, reduces the killing to manslaughter; of which it is an aggravated case.
MoKiNNuar, J:
Having been absent from the bench during the arguments of this case, I express no opinion upon any question presented in the record.